## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EINAR BRADFORD RORVIK, JR., | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 26-CV-1833 |
| | : | |
| BUCKS COUNTY, PENNSYLVANIA, | : | |
| *et al.,* | : | |
| *Defendants.* | : | |

### MEMORANDUM

**Pappert, J.**                                                                                    **July 15, 2026**

Einar Bradford Rorvik, Jr. filed this *pro se* civil action claiming his constitutional

rights were violated in connection with his eviction from a rental property and

subsequent criminal prosecution.  After filing his initial Complaint, he filed an

Amended Complaint[1] (Dkt. No. 8) and paid the filing fee.  For the following reasons, the

Court will deny his request to proceed *in forma pauperis* as moot because he has paid

the filing fee in full and dismiss the Amended Complaint pursuant to 28 U.S.C. §

1915A.

---

[1] An amended complaint, once submitted to the Court, serves as the governing pleading in the case because an amended complaint supersedes the prior pleading.  *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity.  Thus, the most recently filed amended complaint becomes the operative pleading." (internal citations omitted)), *cert. denied*, 140 S. Ct. 1611 (2020); *see also Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (holding that "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings").  In the caption of his amended complaint, Rorvik wrote "Bucks County, Pennsylvania, *et al.,* defendants" but he did not include the names of any additional defendants.  He refers to "Defendants" throughout the Amended Complaint and mentions the Commonwealth of Pennsylvania, Judge Jordan Yaeger, Landlord Anthony Indelicato, his ex-wife, and her attorney, and Perkasie and Pennridge Police Departments and unidentified police officers who work for those departments.  (Dkt. No. 8 at 8, 10-11, 15, 6.)  Although he did not specifically name these defendants in the caption, the Court will liberally construe his *pro se* Amended Complaint and address the claims against them.

I[2]

Rorvik's claims appears to stem from being evicted from his rental property, located at 401 E. Callowhill Street in Perkasie, and court proceedings in Bucks County related to his eviction and divorce. (Am. Compl. at 3-4, 7, 11-12). He asserts that on June 9, 2024, his lease to the property, described as "his residence/office/storage/parking was disregarded by police officers while performing a Sunday morning eviction of the landlord, Anthony Indelicato." (*Id.* at 3-4.) The police were there to "secure the property." (*Id.* at 10.) Because he was "[u]nder threat of mild force" that he would be dragged out of the property, presumably by the police, he "grabbed a front seats worth of clothes, leaving all other worldly possessions behind." (*Id.* at 4.) He claims "[u]nder threat of arrest, he was told not to return" to the property and he complied with the "officer's orders," which resulted in him becoming homeless. (*Id.* at 5.) He asserts his videos, records, and other property were destroyed and/or seized when police entered the locked property. (*Id.* at 10-11.) He further alleges he was not given a notice of the eviction as required in Pennsylvania, and he was discriminated against because "they allowed the other tenant, Lynda Jones, to remain despite her being issued a 10-day notice to quit" by the landlord. (*Id.* at 9.) At some point, he went to the Pennridge police station to show proof of his lease to the property and the title to his truck, but claims "Pennridge did not perform due diligence, the

---

[2] Rorvik's Amended Complaint consists of approximately sixteen handwritten pages. (Dkt. No. 8.) The factual allegations set forth in this Memorandum are taken from the Amended Complaint. The Court considers the entirety of the submission to constitute the Amended Complaint and adopts the sequential pagination assigned by the CM/ECF docketing system. Where the Court quotes from the Amended Complaint, punctuation, spelling, and capitalization errors will be cleaned up. The Court may also consider matters of public record when conducting a screening under § 1915. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

eviction [was] done without due process under the law, [and] the writ of execution to secure the property issued by [Judge] Jordan Yeager is evidence the police acted in violation of the Fourteenth Amendment" and deprived him of his personal property. (*Id*. at 11-12.)

Rorvik "feels county agencies [and] municipal police officers acted under a conspiracy to retaliate against" him, citing to 18 U.S.C. § 241.  (*Id*. at 4-5.)  He also alleges a conspiracy, again citing to 18 U.S.C. § 241, "through a divorce," mentioning Judge Yaeger, "officers of Pennridge and Perkasie police departments [and] certain individuals."  (*Id*. at 7.)  Based on other conspiracy allegations made throughout his Amended Complaint, he claims the Commonwealth of Pennsylvania, Bucks County, and other state actors involved in the eviction conspired with his ex-wife, her attorney identified as Amy Newman, and his landlord, referencing that state action occurs when private actors "operate as a willing participant with the agents thereof."  (*Id*. at 8-9, 12.) It appears he mentions the divorce and his ex-wife because the property was ordered by Judge Yaeger to "be sold by divorce," which ultimately led to the eviction.  (*Id*. at 8-9, 12.)

Rorvik was humiliated and intimidated because of the eviction, and claims that "he is the victim, not Mrs. Indelicato."  (*Id*.)  He was subsequently arrested on December 31, 2025[3] on arson and theft charges, among others, "using false information where he now has been deprived of multiple rights stemming from the events beginning

---

[3] A review of the public docket confirms that Rorvik was arrested on this date for a state criminal case filed against him for arson with the intent to collect insurance and related fraud, theft, and trespassing charges.  *See Commonwealth v. Rorvik*, MJ-07303-CR-0000390-2025 (M.J. Bucks).  It appears he posted bail in April 2026 and is no longer incarcerated at Bucks County Jail.  (*Id*.)

in 2022." (*Id.* at 7.)  He asserts he is "stuck" on "fraudulent accusations," presumably referring to the pending criminal charges,[4] because he "wouldn't play the game." (*Id.* at 16.)

As a result of these events, Rorvik appears to bring claims, *inter alia*, for a violation of his due process rights, discrimination/equal protection, illegal search and seizure, and conspiracy.[5]  (*Id.* at 3-4, 8-12.)  As relief, he "is insisting [on] redress for his lost property and the loss of his residence, for he became instantly homeless." (*Id.* at 5.)

---

[4] It is unclear if Rorvik intended to bring a malicious prosecution claim.  *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name.").  An element of a Fourth Amendment malicious prosecution claim is that the criminal proceeding ended in the plaintiff's favor.  *See Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007).  A "favorable termination" occurs when a prosecution ends "without a conviction."  *Thompson v. Clark*, 596 U.S. 36, 49 (2022) ("In sum, we hold that a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence.  A plaintiff need only show that the criminal prosecution ended without a conviction.").  To the extent Rorvik intended to bring a malicious prosecution claim, it is not cognizable in a civil rights action at this time because he has not alleged that the criminal proceedings have terminated in his favor.  Furthermore, the public docket reveals the criminal charges are still pending.  *See Rorvik*, MJ-07303-CR-0000390-2025.

[5] Rorvik attempts to assert claims for conspiracy, citing to 18 U.S.C. § 241, and potentially for claims under the Pennsylvania criminal code.  (*See* Am. Compl. at 4-5, 7; *see also* Dkt. No. 7.)  However, criminal statutes generally do not give rise to a basis for civil liability.  *See Brown v. City of Phila. Office of Human Res.*, 735 F. App'x 55, 56 (3d Cir. 2018) (*per curiam*) ("Brown alleges that the defendants violated various criminal statutes, but most do not provide a private cause of action."); *see also, e.g., Williams v. Wetzel*, 827 F. App'x 158, 162 (3d Cir. 2020) (*per curiam*) (recognizing that plaintiff's civil claims brought pursuant to the Pennsylvania Crimes Code were properly rejected by the district court because there was no private right of action available under the Code); *Bey v. Patterson*, No. 25-2081, 2025 WL 2233669, at *2 n.5 (E.D. Pa. Aug. 4, 2025) (holding that civil rights criminal statutes do not give rise to a civil cause of action); *Grande v. Starbucks Corp.*, No. 18-4036, 2019 WL 1455445, at *4 (E.D. Pa. Apr. 2, 2019) (finding that plaintiff's "causes of action . . . predicated on violations of Pennsylvania's criminal and administrative codes" could not "support or form the basis" of his claims because those "provisions do not include a private cause of action"); *Schwartz v. Steven Kramer & Assocs.,* No. 90–4943, 1995 WL 3673 (E.D. Pa. Jan. 4, 1995) (finding no private causes of action for forgery or theft under Pennsylvania law).

4

He also filed a separate motion requesting money damages, relief related to his pending

criminal case, including a dismissal of his criminal charges,[6] and appears further to

want various other individuals and entities charged with several state and federal

crimes.[7]  (Dkt. No. 7.)

---

[6] Any claims seeking dismissal of the pending state charges because of a constitutional violation must be pursued in a petition for a writ of *habeas corpus*; such claims are not cognizable in a civil rights action.  *See Jaffery v. Atl. Cty. Prosecutor's Office*, 695 F. App'x 38, 41-42 (3d Cir. 2017) (*per curiam*) ("[T]o the extent Jaffery seeks dismissal of the charges against him as a result of constitutional violations, such relief is only available through a writ of habeas corpus."); *see also Duran v. Weeks*, 399 F. App'x 756, 759 (3d Cir. 2010) (*per curiam*) ("[T]o the extent that Duran is seeking dismissal of the charges against him as a result of constitutional violations, he is essentially asking for relief only available through habeas corpus.").

He also requests injunctive relief pursuant to "PA Rule 600," Pennsylvania's speedy trial provision and to be released from custody, which is moot since he posted bail and was released in April 2026 as mentioned above. (Dkt. No. 7 at 5-6.)  The Court understands his reference to Rule 600 to be a request to intervene in his state criminal case.  However, as a general matter, federal courts may not intervene in state criminal prosecutions.  *See Younger v. Harris*, 401 U.S. 37, 43-44 (1971) (recognizing that the "longstanding public policy against federal court interference with state court proceedings" generally requires federal courts to abstain from addressing issues in state criminal proceedings absent exceptional circumstances).  Thus, to the extent Rorvik asks the Court to countermand rulings made in his state criminal matter, such as when his criminal trial is scheduled, the Court may not do so.  *See Borowski v. Kean Univ.*, 68 F.4th 844, 844 (3d Cir. 2023) (quoting *Younger*, 401 U.S. at 45) ("[T]he normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions.").

[7] A "private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (finding that a citizen lacks standing to contest prosecutorial policies "when he himself is neither prosecuted nor threatened with prosecution") (citations omitted); *Lewis v. Jindal*, 368 F. App'x 613, 614 (5th Cir. 2010) ("It is well-settled that the decision whether to file criminal charges against an individual lies within the prosecutor's discretion, and private citizens do not have a constitutional right to compel criminal prosecution.") (citations omitted); *Smith v. Friel*, No. 19-943, 2019 WL 3025239, at \*4 (M.D. Pa. June 4, 2019), *report and recommendation adopted*, 2019 WL 3003380 (M.D. Pa. July 10, 2019) (collecting cases and stating "courts have long held that a civil rights plaintiff may not seek relief in civil litigation in the form of an order directing the criminal prosecution of some third parties").

II

Although Rorvik paid the filing fee in full and was released from custody after filing his case, the Court has the authority to screen his Amended Complaint pursuant to 28 U.S.C. § 1915A since he filed this case when he was a prisoner. *See e.g., Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding *in forma pauperis*); *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 314 (3d Cir. 2001) (*en banc*) ("[T]he need for the district court to screen a complaint in a civil action filed by a prisoner, as required by 28 U.S.C. § 1915A, looks to the plaintiff's status when the case is filed."); *In re Smith*, 114 F.3d 1247, 1251 (D.C. Cir. 1997) ("If a litigant is a prisoner on the day he files a civil action, the PLRA applies."). Section 1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2).

Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Neal v. Pa. Bd. of Prob. & Parole*, No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Accordingly, the Court must determine whether the amended complaint

6

contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* amended complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Rorvik is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III

Rorvik asserts his federal constitutional claims pursuant to § 1983, the vehicle by which such claims may be brought against state actors in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation

7

was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

A

States are not considered "persons" for purposes of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989). Furthermore, the Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). The Commonwealth of Pennsylvania has not waived that immunity. *See* 42 Pa. Cons. Stat. § 8521(b).

B

Following the decision in *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978), courts concluded that a police department is a sub-unit of the local government and, as such, is merely a vehicle through which the municipality fulfills its policing functions. *See Johnson v. City of Erie, Pa.*, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993). Thus, while a municipality may be liable under § 1983, a police department, as a mere sub-unit of the municipality, may not. *Id.*; *see also, e.g., Martin v. Red Lion Police Dept.*, 146 F. App'x. 558, 562 n.3 (3d Cir. 2005) (*per curiam*) (stating that police department is not a proper defendant in an action pursuant to 42 U.S.C. § 1983 because it is a sub-division of its municipality); *Bonenberger v. Plymouth Township*, 132 F.3d 20, 25 (3d Cir. 1997) ("As in past cases, we treat the municipality and its police department

8

as a single entity for purposes of section 1983 liability" (citing *Colburn v. Upper Darby Township*, 838 F.2d 663, 671 n.7 (3d Cir.1988))); *Hadesty v. Rush Twp. Police Dep't*, No. 14-2319, 2016 WL 1039063, at *9 n.4 (M.D. Pa. Mar. 15, 2016). Therefore, the Pennridge and Perkasie Police Departments are not proper defendants in this case under Section 1983 and will be dismissed. In any event, Rorvik has not pled a basis for municipal liability, as explained further below.

## C

Rorvik's claims against Judge Yaeger are also not plausible because judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction. *See, e.g., Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (*per curiam*); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (*per curiam*). An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). Moreover, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)). Because judges must feel free to act without fear of incurring personal liability for their actions in court, judicial immunity remains in force even if the actions are alleged to be legally incorrect, in bad faith, malicious, or corrupt, *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991), or are taken as a result of a conspiracy with others, *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). As Rorvik's claims against Judge Yaeger are based on acts he took in his judicial capacity while

presiding over an eviction matter and/or divorce proceedings over which he had jurisdiction, Judge Yaegar is entitled to absolute judicial immunity from Rorvik's claims. *See, e.g., Lee v. Gallina Mecca*, No. 22-2871, 2023 WL 5814783, at \*4 (3d Cir. Sept. 8, 2023) ("But even accepting Lee's allegations as true, judicial acts that appear to be unfair, malicious, or *ex parte* are not stripped of their judicial immunity); *Palmer v. PHA*, No. 21-2906, 2021 WL 3662401, at \*4 (E.D. Pa. Aug. 17, 2021) (judges are entitled to absolute judicial immunity based on acts they took in their official capacities while presiding over eviction proceeding); *Martin v. Bicking*, 30 F. Supp. 2d 511, 513 (E.D. Pa. 1998) (District justice was judicially immune from liability for actions taken by justice arising out of plaintiff's trial and sentencing for summary offenses).

## D

The gravamen of Rorvik's Amended Complaint appears to be due process claims against the police officers involved in evicting him from the property for the loss and destruction of his personal property and a failure to provide notice. (Am. Compl. at 5, 10-12.) Under the Fourteenth Amendment, Rorvik is entitled to due process of law before the government can deprive him of his "life, liberty, or property." U.S. Const. amend. XIV, § 1, cl. 3. Nonetheless, an individual may not assert a claim under § 1983 for even an intentional deprivation of the individual's property by a government employee "if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Daniels v. Williams*, 474 U.S. 327, 328 (1986) (negligent acts of officials causing unintentional loss of property do not violate due process).

Pennsylvania law provides Rorvik with an adequate state remedy— the

Pennsylvania Tort Claims Act— for the loss and destruction of his property. *See Spencer v. Bush*, 543 F. App' x 209, 213 (3d Cir. 2013) (*per curiam*); *see also, e.g., Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (*per curiam*) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property); *Thompson v. Ferguson*, No. 19-3455, 2019 WL 3573525, at *5 (E.D. Pa. Aug. 5, 2019) (dismissing Fourteenth Amendment claim based on the loss and destruction of property during a search because the Pennsylvania Tort Claims Act provides an adequate remedy); *Shiloh v. Does*, No. 12-1086, 2013 WL 5297511, at *8 (M.D. Pa. Apr. 19, 2013), (dismissing Fourteenth Amendment deprivation of property claim based on damage done to the plaintiff's home and personal items during a search and seizure because the plaintiff could have filed a tort claim under Pennsylvania law, thus negating any due process violation), *report and recommendation adopted sub nom. Shiloh v. John Does*, No. 12-1086, 2013 WL 4761124 (M.D. Pa. May 14, 2013).[8]

---

[8] It is unclear if Rorvik intended to assert claims based on state law. In any event, because the Court dismisses his federal claims, it will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln,* 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche,* 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood,* 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). Rorvik lists a Pennsylvania address for himself, and names Bucks County and other municipalities in Pennsylvania, which suggests that he and some, if not all, of the Defendants may be Pennsylvania citizens. Accordingly, he has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue.

In addition to a deprivation of property claim, Rorvik alleges he was not given notice of the eviction, and "the writ of execution to secure the property issued by [Judge] Jordan Yeager is evidence the police acted in violation of the Fourteenth Amendment." (Am. Compl. at 9, 11.)  However, because it is apparent from Rorvik's allegations that the ejectment was ordered by the state court, the police officers who carried out and assisted with the writ of eviction are entitled to quasi-judicial immunity on his civil rights claims.  *See, e.g., Barel v. Off. of Clerk of Superior Ct. of N.J.*, 834 F. App'x 763, 765 (3d Cir. 2020) (*per curiam*) (holding that a sheriff executing a court order enjoys quasi-judicial immunity) (citing *Russell v. Richardson*, 905 F.3d 239, 250 (3d Cir. 2018) (quasi-judicial immunity covers acts authorized by court order)); *Roland v. Phillips*, 19 F.3d 552, 556 (11th Cir. 1994) (quasi-judicial immunity protects law enforcement officials executing facially valid court orders)).  Even if the order was unlawful, the police officers involved are entitled to rely on the facially valid state court order.[9]

---

[9] Rorvik also refers to an alleged violation of his equal protection rights and to §§ 1981 and 1982. (Am. Compl. at 3.)  A "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other." *Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)). Even if the Court did entertain these claims, to state a claim under § 1981, Rorvik must allege that "(1) [he] is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in [section 1981]." *Bailey v. Harleysville Nat'l Bank & Trust Co.*, No. 04-1541, 2005 WL 2012024, at *5 (E.D. Pa. Aug. 22, 2005) (quotation omitted).  To state a claim under § 1982, a plaintiff must allege "1) the defendant's racial animus; 2) intentional discrimination; and 3) that the defendant deprived plaintiff of his rights because of race." *Rose v. Rothrock*, No. 08-3884, 2009 WL 1775614, at *5 (E.D. Pa. Apr. 29, 2009) (internal quotation and citations omitted).  Rorvik does not allege he is a member of a racial minority.  There are also no allegations in the Amended Complaint asserting that he was treated differently than any other similarly situated individuals and, importantly, that there was no rational basis for the treatment.  *See Phillips v. County of Allegheny*, 515 F.3d

Further, to the extent Rorvik claims his injuries were caused by a defect in the state court judgment—*e.g.,* a lack of due process—and is seeking to invalidate the state court's decision on that basis, the *Rooker-Feldman* doctrine bars his claims.  *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).  Pursuant to the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010).  As the Supreme Court recently reiterated, the *Rooker-Feldman* doctrine deprives a federal district court of jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *T. M. v. Univ. of Md. Med. Sys. Corp.*, 608 U.S. ---, --- S.Ct. ----, No. 25-197, slip op. at 18 (U.S. June 18, 2026), 2026 WL 1751823, at *11 (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005)); *see also Great W. Mining*, 615 F.3d at 166 (same).

Since a portion of Rorvik's Amended Complaint can be interpreted to challenge the state court's judgments in the divorce proceeding to sell the property and/or the writ of execution for his eviction from the property, and to request invalidation of those judgments, the Court lacks jurisdiction under the *Rooker-Feldman* doctrine over this aspect of his case.  *See generally Stern v. Nix,* 840 F.2d 208, 212 (3d Cir.

---

224, 243 (3d Cir. 2008) (to state an equal protection claim on a "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment").  Based on his own allegations, he was evicted for a rational basis, *i.e.,* pursuant to a writ of execution issued by Judge Yaeger. (Am. Compl. at 11-12).

1988) (explaining that the complaint in question was merely a "skillful attempt to mask the true purpose of the action, which essentially is to reverse the judicial decision [of the state court]").

E

Rorvik appears to assert constitutional claims against his ex-wife's attorney, Amy Newman, presumably for representing her in the divorce or other state court proceedings. (Am. Compl. at 7, 12-13.)  Private attorneys are not state actors. *See, e.g., Gannaway v. Stroumbakis*, 842 F. App'x 725, 730 (3d Cir. 2021) (*per curiam*) (noting that "[a] privately retained attorney clearly does not act under color of state law, and . . . that 'no color of state law attache[s] to the functions of court-appointed counsel.'"); *Coulter v. Allegheny Cnty. Bar Ass'n*, 496 F. App'x 167, 169 (3d Cir. 2012) (*per curiam*) (none of the defendants named, including an attorney, his law firm, the Pennsylvania Bar Association, the Allegheny County Bar Association or its three individual members, were state actors for purposes of Section 1983).

Rorvik's constitutional claims against his landlord and ex-wife are not plausible because they too are not state actors for purposes of § 1983. *See Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995) (explaining that state action is a "threshold issue" for § 1983 claims). "Whether a defendant is acting under color of state law – *i.e.*, whether the defendant is a state actor – depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted).  In assessing whether a private party's action constitutes state action the Court will consider: "(1) whether the private entity has

14

exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).  To support a finding of state action, "the government must be 'responsible for the specific conduct of which the plaintiff complains.'" *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

None of those criteria are met here.  It appears the property was ordered to be "sold by divorce" in state court, which subsequently resulted in "the writ of execution to secure the property" issued by Judge Yeager.  (Am. Compl. at 11-12.)  His landlord and ex-wife are private individuals, who were involved in state court proceedings against Rorvik related to his eviction and divorce.  Rorvik contends that his landlord and ex-wife participated and conspired with the police or other state actors that ultimately led to his eviction from the property.  (*Id.*)  However, to the extent they were involved with the state actors because they filed a lawsuit for the eviction or the divorce, and/or gave police officers information, even false information, that ultimately led to his eviction does not transform them into state actors.  "Merely giving information to police officers is insufficient to convert a private party into a state actor." *Simmer v. Kehler*, No. 15-2285, 2015 WL 6737017, at *3 (D.N.J. Nov. 2, 2015) (collecting cases); *see also*, *e.g. Yoast v. Pottstown Borough*, 437 F. Supp. 3d 403, 420 (E.D. Pa. 2020) ("Providing false information to the police -- even deliberately -- does not transform a private party into a

state actor."), *aff'd,* No. 22-1960, 2023 WL 4418213 (3d Cir. July 10, 2023); *Gueson v. Feldman*, No. 00-1117, 2001 WL 34355662, at \*10 (E.D. Pa. Nov. 30, 2001) ("Filing a lawsuit in state court, is not for 1983 purposes 'state action;' nor does it turn a private citizen into a state actor.").

Nor can his landlord or ex-wife be considered state actors based on Rorvik's allegations of conspiratorial conduct because he has failed to state a conspiracy claim under § 1983. Rorvik attempts to assert a widespread conspiracy between the non-state actor and state actor Defendants to evict and/or deprive him of the property, notably through a state court writ of execution, to nudge his claims from the possible to the plausible. (Am. Compl. at 7-11.) As an initial matter, a "bare assertion of conspiracy" does not suffice to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Furthermore, "'[a] conspiracy cannot be found from allegations of judicial error, ex parte communications (the manner of occurrence and substance of which are not alleged) or adverse rulings absent specific facts demonstrating an agreement to commit the alleged improper actions.'" *Capogrosso v. The Supreme Court of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009) (*per curiam*) (quoting *Crabtree v. Muchmore*, 904 F.2d 1475, 1480-81 (10th Cir. 1990)). Rather, "to properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining*, 615 F.3d at 178. Rorvik's allegations of conspiracy are essentially predicated on these Defendants' actions related to his eviction, as ordered by Judge Yaeger, and the judge's order for the property to be sold in connection with the divorce proceedings. (Am. Compl. at 11-12.) Rorvik has not alleged any facts that plausibly suggest a meeting of the minds between his landlord, his ex-wife, and the

16

state actor defendants. *See Twombly,* 550 U.S at 556 (holding that a plaintiff claiming conspiracy must plead "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement"). The Amended Complaint sets forth a "conclusory allegation of agreement at some unidentified point[, which] does not supply facts adequate to show illegality." *Id.* at 557. Specifically, he has failed to allege any facts to support a conspiracy, such as the approximate time when the agreement was made, the specific parties to the agreement, the period of the conspiracy, or the object of the conspiracy. *See Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1166 (3d Cir. 1989) ("To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose."), *abrogated on other grounds by Beck v. Prupis,* 529 U.S. 494 (2000). The fact that the state court proceedings resulted in Rorvik's eviction from the property, and that the other defendants abided by such rulings, are not sufficient to plausibly allege the existence of a conspiracy. *See, e.g., Dennis,* 449 U.S. at 28 ("[M]erely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge."); *Great W. Mining,* 615 F.3d at 179 (holding that conspiracy claim was not plausible where plaintiff "failed to allege except in general terms the approximate time when the agreement was made, the specific parties to the agreement . . . , the period of the conspiracy, or the object of the conspiracy"); *Young v. Kann,* 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (plaintiff cannot rely exclusively "upon his own suspicion and speculation" to establish a conspiracy claim). Rorvik's allegations merely assume the existence of a conspiracy rather than alleging one. In sum, his allegations

17

of conspiracy are insufficient either as a basis for a conspiracy claim or as a basis for finding that the private defendants may be considered state actors for purposes of § 1983.  *See generally Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotations omitted); *see also Twombly*, 550 U.S. at 570 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

F

Rorvik names Bucks County as a defendant.  As an initial matter, a municipality is not vicariously liable under § 1983 for the actions of its employees.  *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (holding that local governments can be liable as "persons" under § 1983, but this liability extends only to "their *own* illegal acts" (emphasis in original) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). Rather, to state a § 1983 claim against a municipality or municipal entity, a plaintiff must allege that the municipality or municipal entity's policy or custom caused the violation of his constitutional rights.  See *Monell,* 436 U.S. at 694.  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citing *Phillips*, 515 F.3d at 232).  A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  "This consists of a showing

18

as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* But "[i]t is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (stating that if a municipal employee "inflicted no constitutional injury . . ., it is inconceivable that [the municipality] could be liable")).[10]

## IV

For the foregoing reasons, the Court will dismiss the Amended Complaint pursuant to 28 U.S.C. § 1915A and deny Rorvik's motion (Dkt. No. 7). Any state law claims and all claims barred by the *Rooker-Feldman* doctrine will be dismissed without prejudice for lack of subject matter jurisdiction. All remaining claims will be dismissed with prejudice. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that complaints dismissed under the Prison Litigation Reform Act should be with leave to amend "unless amendment would be inequitable or futile"). An

---

[10] Even if Rorvik stated plausible constitutional violations, he failed to allege facts to support any *Monell* claim against Bucks County. He does not identify any policy or custom, or sufficiently allege that the conduct of which he complains was caused by a municipal policy or custom, or municipal failures amounting to deliberate indifference. The only mention of any *Monell* allegation was not alleged in his Amended Complaint, but in a separately filed motion. (Dkt. No. 7.) He claims Bucks County "failed to adequately train or supervise its employees." (*Id.* at 11.) Although this allegation is improperly asserted outside the operative pleading, even if the Court considered this conclusory allegation, simply paraphrasing the standard for municipal liability does not support a plausible claim. *See Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*." (citing cases)).

19

appropriate Order dismissing this case will be entered separately.  *See* Federal Rule of Civil Procedure 58(a).

**BY THE COURT:**

*/s/ Gerald J. Pappert*
**Gerald J. Pappert, J.**
